Mr. Gonzalez, I neglected to note that you were court-appointed for Mr. Pitts and we really do appreciate it. Thank you. Our next case is number 18-10839, John Berene and Cameron Longson v. Nationstar Mortgage LLC et al. Mr. Golant. May it please the Court, Mr. Gottlieb. My name is Jeffrey Golant and I represent the appellants John Berene and Cameron Longson. This is the second time this case is argued before the Court and this case arises from the Real Estate Settlement Procedures Act. As this Court noted in the case of Renfro v. Nationstar Mortgage, RESPA, or the Real that's designed to protect mortgage borrowers like my clients. The case arises from a contested mortgage foreclosure and correspondence that my client sent through counsel to Nationstar back in 2014. The issues in this appeal, there's really three overarching issues. Two of them are closely related. The first issue is that at Nationstar's invitation, the district court adopted an interpretation of the RESPA correspondence that frankly is completely at odds with its plain language. Do you think that's fair? I get it that you've got the one kind of zinger line in the letter that uses the word never twice and always once, but the balance of the letter is really about the foreclosure. The attachments are really about the foreclosure. So it seems to me, I mean, this is, it's not an implausible reading of the letter. It seems to me, maybe it's not a perfect reading of the letter. Maybe the letter is just imperfectly drafted. But I mean, what are we to do when a lender reasonably, plausibly tries to make, give it sort of the old college try when they're faced with a letter like this? Well, Your Honor, I think that you have to look at the rest of the statute and the regulatory regime, which is why I would argue the first two issues are closely related. Because if Nationstar did subjectively misunderstand the letter when it sent its response, then that should have been made apparent in its first response. So what would it have said? We misunderstand the letter? I mean, it receives a letter, it thinks it understands it, and it responds to what it thinks it understands the letter to say. Well, Your Honor, the second part is just not consistent with what it said. The error, certainly the notice of error, the first letter, certainly discusses force-placed insurance. The only statement in Nationstar's initial response, and in fact, the only statement it ever made, says, with regards to your concerns about force-placed insurance, the escrow was added due to unpaid taxes. The story that the Nationstar offered at summary judgment and that the district court accepted was that it read a temporal limitation into the first letter. However— With regards to that first letter, I think you have a stronger argument with regard to your second letter. But the first letter seems to be all about the allegedly due amounts that triggered the foreclosure lawsuit and the judgment in that case. As to the first letter, let's just deal with the first letter for itself. As to that first letter, putting aside the affidavit submitted by Nationstar, why isn't a reasonable, objective reading of that letter that you were concerned with force-placed insurance and other improper financial debits and credits pre-foreclosure? Well, for one thing, the letter says, in its text, it says, we do believe that the foreclosure was caused by the force-placed insurance. But even if it wasn't, then charges for force-placed insurance continue to exacerbate the default. That was written in the plain text of the letter. So—and importantly, and I think this really can't be overlooked, at no point in any of its correspondence does Nationstar ever explain why it believed the force-placed insurance did not cause the foreclosure. And in fact, the record doesn't show that it didn't either. It simply became irrelevant years later when the case came up for summary judgment. But isn't the key, I guess, to the question that Judge Jordan and I are both asking, and I'm looking at the letter clearly, much, if not all, of the claim default is attributable to charges for force-placed insurance. I mean, Judge Jordan is asking you, yes, so it was griping about force-placed insurance, but with respect to default and subsequent foreclosure, right? Yes. Okay. So if—and that triggered Nationstar's obligation when it responded. If it determined there was no error and no—and that the force-placed insurance didn't cause the default, it was required to provide a statement of the reason or reasons for that determination. And that required statement is wholly absent from its response. The only statement Nationstar ever made in its RESPA correspondence about force-placed insurance was non-responsive and incorrect. It simply said the reason that the escrow—I mean, I believe it's incorrect, but it's certainly non-responsive. The reason for the—the reason why the escrow was added was due to unpaid taxes. It doesn't say during the time period in your letter there was no force-placed insurance. Nothing in that response puts the borrower even on notice that Nationstar read the always and never as actually based on the attachments limiting it to a specific period in 2008. So, but I take it you don't dispute that under the statute, if a lender makes a reasonable interpretation and responds to what sort of it reasonably understands the letter to say sufficient, right? Good to go. If it— Reasonable interpretation is good enough. A reasonable interpretation disclosed in its response. And as Judge Jordan points out, we did send follow-up correspondence that said, Nationstar, you appear to have misunderstood us. We have a concern about force-placed insurance. And Nationstar's response to that was we consider your second letter to be duplicative, and the matter is therefore concluded. Now, and that—that shows why the response requirement that exists in the statute that is discussed in Renfro is critical here. And ironically, there's argument in the briefs that the servicer shouldn't be required to read the borrower's mind. But RESPA and Regulation X say the borrower isn't required to read the servicer's mind. If the servicer determines that no error occurred, that's not something we learn about in a deposition years later. Assuming—assuming that we agree with you, at least with respect to the second response, the response we're not going to want to look at this anymore because we've already dealt with it, what are your damages? Damages are always tricky in cases like this. And this Court has—and I believe it's the only opinion that really considers the issue, and I think the Court got it exactly right in RESPA—or, I'm sorry, in Renfro. And in Renfro, the Court refuses to distinguish, as I read it, between the error and damages. Now, granted, that was decided at the motion to dismiss stage. But Renfro, as I read it, says when an error occurs and the servicer denies the error happened, it cannot then avoid RESPA liability by correcting the letter after it does so—or correcting the error after it does so. And that's what happened here because it was undisputed that there were, in fact, $9,000 in force-placed insurance charges that were on the account. Do you deny that those were refunded, though? They were not refunded until well into the litigation. That's fine. Maybe we can talk about mootness or voluntary cessation or something, but do you deny that they were refunded? No. No. The question is what Judge Wright asked you, which is what is the measure of damages, generally speaking, in a case like this where at least the out-of-pocket harm has been remedied post-litigation? And that is the question that Renfro doesn't answer. When they refinance, when your client's refinanced, and I assume they're still in the house. Is that right? It doesn't really matter. They are. And they modified their mortgage, so the charges were carried through. And so that $9,000 was part of the package, the refinance package. Is that correct? No. There was no refinance. They just modified the mortgage. So that $9,000 was added to their debt, and it was ultimately removed from their debt. And so they had to pay interest on the 9,000 plus until it was refunded, and so I guess there would be something there in terms of actual, but it's really, some of the documents are very confusing to me. In other words, I don't really know what was accrued when and when the $9,000 was, I mean, on what basis was that done? And it seems that the correspondence confuses the insurance with the taxes and... I think that's true. I think that does happen, and I think the damages in this case would be nominal. As it appeared in 2014, you know, as the case developed and we got into discovery and we learned information, a lot of the facts became a lot clearer. Did you raise a claim for nominal damages measured by interest or otherwise in the district court? We didn't specifically raise that. Did you unspecifically raise it? We cite Renfro, and we cite Renfro's language that a court, or that a servicer cannot avoid arrest liability by correcting the error going forward. And that's what we think Renfro stands for. Renfro doesn't say what damages would be awarded. I would suggest that an award of nominal damages, something perhaps on the order of interest or even postage fees, should be considered because, and that concept isn't unknown in the law, nominal damages exist. For example, very often people, in order to defeat a trespass claim, would have to bring a lawsuit, or in order to defeat an effort to establish adverse possession over real estate, would have to bring an action for trespass and obtain an award of a dollar at common law. The difficulty, I think, for you procedurally is that everything you just said was available to you in the district court, and yet you didn't make an argument for nominal damages measured by interest or otherwise there. So you're asking us really kind of for the first time to craft a nominal damages theory that would then allow you to bootstrap the additional damages theory. We didn't request an award of damages at the summary judgment stage. We argued in response to Nation Star's contention that there was no damages, that that's not true. The damages were the error, and Renfro recognizes that that is in fact damages under this statute. The error is the violation, but not necessarily the harm, monetized harm. You can have a violation of a statute. You can have a violation of a constitutional right, but generally you have to show that there's some resulting injury from that violation, right? So here your contention is that Nation Star's two responses were inadequate, didn't satisfy RESPA, and violated RESPA. Correct. But the question still remains, how were your clients harmed? And I guess your answer is they were at least harmed in a nominal way, and they're at least entitled to an award of nominal damages if they can prevail. At the point the complaint was filed, they were harmed because they were overcharged more than $9,000. Right. I completely understand that. When you filed the complaint, at least at that point in time, you didn't have to worry about nominal damages because your clients and your view were out the forced insurance amounts, right, and had been overcharged for them. And so if you won, you would at least be able to recoup those amounts of money. Exactly. And that's why in order for RESPA to accomplish its purpose, a mortgage servicer can't be allowed to correct the error and moot the damages, and actually thereby win the case. That would just make it impossible for a borrower to really ever prevail even when they're overcharged, in this case, a substantial amount. Why doesn't just sort of ordinary mootness doctrine take care of this? I mean, like, you know, we have mootness cases all the time where the defendant, after the lawsuit, kind of stands down in an effort to avoid litigation or whatever, and then we have this big debate about whether voluntary cessation is good enough to moot a case. Why wouldn't that ordinary mootness doctrine sort of take care of RESPA like it does constitutional violations? Because as this court recognized in Renfro, that would completely undermine the enforcement of the statute. But, I mean, wouldn't the same be true of, say, the First Amendment? You know, I mean, and yet we have a mootness doctrine that, you know, sort of allows in certain circumstances cases to die of their own, you know, sort of accord. We also have exceptions to the mootness doctrine. Correct. And I guess I'm just wondering why it is that we're not talking about that instead of Renfro, and there's something sort of magical about RESPA. Well, it's for the same reason why we have exceptions to the mootness doctrine. It's not an, it's not an, there's exceptions to every rule, and in this case, Renfro makes the exception because it recognizes that you could not have the consumer protection regime in place if you would allow a servicer to moot every case once it's demonstrated that there is an error, that it didn't correct pre-suit in response to the correspondence by simply eliminating those charges. The unique situation under RESPA is the mortgage servicer is in complete control over what it charges to the account. So it could always protect itself by correcting the account belatedly. Gotcha. All right. Thank you very much. You've saved your time for rebuttal. Mr. Gottlieb. Good morning. May it please the court, Mark Gottlieb with Aikerman LLP on behalf of Appellee Nation Star Mortgage. The lower court in this case correctly granted summary judgment in favor of Nation Star based on the plain language of the RESPA notice of error correspondence and also based on the unrefuted evidence that was presented below. So everybody says the plain language is in their favor. We are living in Justice Scalia's world here, I guess. But I mean, so he says, look, the letter says there's this line in it that says never and always. What do we do with that? Yeah. And that would be in extreme reading, pulling language out of context. I think as you pointed out, if you read the substance of this letter as a whole, which the court did in a very detailed 16-page opinion, which really picked apart the language of the orders, the language of the letters, and also the record evidence that was before the The error is you placed this in default and started a foreclosure that you shouldn't have because we made all our payments. That's the substance of the letter. You put us in a wrongful foreclosure. And the reason that you did that was because you placed LPI, lender-placed insurance, and that that placement resulted in the misapplication of our regular monthly payments. And all of that triggered a default. I don't think there's any other fair and reasonable way to read those letters. It all related to that. The preface for all of the LPI error arguments was that, that the LPI resulted in the misapplication of those 2008 payments and triggered that default. And the preface also is, as evidenced by the attached documents. So in support of their claim for an LPI error, they attach a bunch of documents. Every one of those documents pertains to the pre-foreclosure 2008 timeframe. Let's take a look at that. Let's take that as a given. Okay. And now let's talk about the adequacy of your response. Your client completely blew over and got wrong their claim about force-placed insurance. Because the response to the first letter says this about the force-placed insurance, limiting it to what you said it should be limited to. With regards to your concerns about the force-placed insurance, our records indicate that escrow was added to the account to cover delinquent county taxes. That's flat out wrong, right? The statement is actually flat out correct. It is wrong insofar as it does not address the borrower's claim that there was improper force-placed insurance. It denies that that was, that that took place. Actually I would disagree with that. What does, tell me what that letter says about force-placed insurance. What the letter says in response is number one, it's a response to the suggestion that LPI, the lender-placed insurance placement, is what caused these payments to be misapplied. And so the very first part of the letter debunks that. It explains in detail, your payments were not misapplied at all. They were actually all correct. And then it attaches the documentation. Because I believe we're on different planes, you and I. Their letter undenied, well, maybe not. So you tell me what you think about the letter. The letter says, the first letter says two things. We can debate what the things mean, but it says two things. The first one is, we made these two payments, right? You didn't properly apply them. Had you properly applied these two payments, we wouldn't be in default. That's allegation one, right? Yes? Yes. And that's clearly understood. You think they're wrong about where the payment should have gone, but they claim that there were these two payments out there that you didn't deal with correctly. That's allegation one. Allegation two, whatever you make of it, and you were responding to Judge Newsom as to why you think it's limited in time and scope, the second allegation is about forced-place insurance, which is separate than the two misallocated payments, right? Separate but connected in that the allegation is that that's what resulted in the misapplication of the payments. Got it. That's the allegation. I'll take that. Okay. Okay? But your response says nothing because their claim was not just that it led to that, but that it was improper because there should never be forced-placed insurance given the way that insurance took place at the association. Your letter says nothing about that part of the letter. Nothing. The letter attaches documents which show that that insurance placement was fully refunded, a fact that they had acknowledged in their own letter to us. They say there was a placement that was refunded. We then attach the records with that. I thought that some of the refunds took place post-letter. Not with respect to the issues framed by this. In 2008... Why didn't you tell them that? Because we attached the records that showed it and explained that it wasn't a creation of escrow for lender-placed insurance that caused your payment default. The issue that you had was the creation of escrow because you didn't pay your taxes. Here are the documents and records that you can look at and shows you that the insurance placement that you acknowledged had been refunded was in fact refunded. It's in the pay transaction histories that they sent to us and that we also retransmitted back to them. It shows that lender-placed insurance was not an issue that impacted their account. We provided the documentation that clearly demonstrated that. What was the lender... Help me then. What was the credit that was provided post-letter, post-lawsuit, as to forced-place insurance? For subsequent years, post-foreclosure, which NationStar did not read as being an issue in these notice of error letters, after the fact, there were refunds for insurance that was placed, I believe, in 2010-11 after the foreclosure. And that was done in response to a new notice of error letter where unlike their prior letters, they said, we are now complaining about insurance placements post-foreclosure. Not 2008 claimants that we alleged triggered our foreclosure, but post-foreclosure. And in response to that, those charges were reversed all within... Actually, one was reversed before the letter and one was reversed shortly after the letter, all in 2015, four years ago, prior to the filing of the operative third amended complaint in this action. I also just want to note that there's a fallacy here. The suggestion that lender-placed insurance is never appropriate in a case like this because there's a condo association, so they procure insurance, so we should just assume that it's always there. That's not my assumption. Okay. I just want to make sure that that's... That's the allegation in the letter. And it seems to me an allegation that you have a responsibility to respond to in some way, shape, or form. And we responded consistent with their letter, which was that any escrows created for this account were not the result of lender-placed insurance. They were the result of your failure to pay taxes. As these documents reflect, and as you acknowledged in your own correspondence to us, the lender-placed insurance that was placed in, I think, May of 2008, and they reiterate that in their follow-up letter, it's a $5,200 Samad placement, was reversed and refunded in November of 2008 when you provided us with evidence of the coverage. And that evidence of the coverage was actually one of the things that they attached to their correspondence. So when you send in your proof of insurance, we say, okay, thank you. And we reverse it and refund it. And we provided that information to them. Again, this is not supposed to be a gotcha or a trap. We did what RESPA contemplates, which is conduct a reasonable investigation, attempt a good faith response, address the main issue that they were alleging here, which was we made all our payments. You failed to properly credit them. You did it because of this lender-placed insurance issue. And that caused us to go into foreclosure, all of which was patently demonstrably false. Discovery in the case made it clear that they did not make all their payments. They've never been able to produce that evidence. Every payment that was reflected in their bank records appeared on the transaction histories that were provided in response to those notice of error requests. It showed when they were applied, what payments they were credited to. The thrust of their argument was based on just a fallacious assumption that if I make a mortgage payment in July, whether I've missed three prior month's payments, I can't be in default for July. But that's not how a mortgage works. Can I ask you an interpretive question? Certainly. The district court considered, at least in part, the affidavit that you submitted as to, you as lawyer, submitted as to how NationStar interpreted the letter or letters, right? It was deposition testimony. Okay. Sorry. Deposition testimony. I thought it was an affidavit. So I apologize for the mistake. Could the district court also have taken into account the borrower's deposition testimony of what they intended in the letter subjectively? First of all, I don't think the borrower said that they never saw the letters. My question is a completely hypothetical one. There was no contrary evidence. My question is a completely hypothetical one. In trying to figure out what this letter to you, to your clients conveyed, right, if it's proper to consider the subjective understanding of the recipient, is it also proper, not in this case maybe, because you say there was no contrary evidence and the borrower never saw the letter, is it ever appropriate to consider the sender's subjective intent? I don't think so. And I don't think that the court did that with regard to NationStar's witness. Why is there a difference between the recipient's understanding and the sender's understanding? I think the significance of the testimony of the NationStar witness and what the court relied on were the details of the investigation that was conducted. What was reviewed, the fact that the letter was taken in, did she testify as to why they limited the inquiry? Yes. The court agreed with her interpretation. The court didn't rely on her subjective intent to make that interpretation. The court did its own analysis of the plain language of the letters and determined that the only fair and reasonable reading of those was that they were confined to the pre-foreclosure time frame. The significance of the deposition of the NationStar representative was that she testified that we took this seriously. We investigated it. We reviewed documents. When you say pre-foreclosure, do you mean before the action was filed? Is that what pre-foreclosure means? Before the action was filed, which was filed, I think, in November of 2008. I don't think that the court in any way said, I'm relying or traveling on the subjective interpretation of the NationStar witness. And even if he had, even if he had relied just on her testimony, again, no countervailing testimony. Once we come in on summary judgment and present evidence that supports our position and view of the case, at that point, they can't rest on allegations. They can't rest on their lawyers' conclusory statements about what they intended and meant. They have to produce evidence. And they did not do that. They certainly couldn't produce it from their own clients. I believe they both testified. We never even read these letters. We never saw them. We weren't impacted by them. But I think, to Jordan's question, is the interpretation of the letter fundamentally an evidentiary issue? Or is it an objective question for the court to answer on its own? And if it's evidentiary, such that your client puts in, this is what we thought it meant, then I don't know why it wouldn't be good for the goose, good for the gander, the plaintiff puts in some evidence, here's what we intended. And then the court nonetheless says, I'm going to construe the thing for myself, objectively. I believe it's an objective determination for the court to make. And I would note this court's decision in Bates versus JPMorgan Chase. I know there's substantial reliance by appellants on Renfro, which is a decision made on a motion to dismiss, where there's no record development. And the only question is whether the pleading was sufficient. And the Renfro facts are much different, because the letter there just said, we've determined there's no error, and stated no reasons at all for anything. But so for our purposes, on a going forward basis, if defendants in the future put in evidence, affidavits, deposition, testimony, whatever, that says, here's what we subjectively understood the letter to mean, the district court judge should say, fine and all, but whatever. I think the court can make that, if the language is plain on its face and objectively limits and confines the inquiry. I don't think it matters, just like with a contract. If it's clear on its face, it doesn't matter what they subjectively believe they meant. In addition to which, this is not supposed to be a trap for the unwary. It's supposed to be a device to exchange information and provide for transparency. As you said, give it the old college try. We gave it the old college try. I went above and beyond. I would just note in this case that this entire case sort of represents an abuse of what the essentially, and as Mr. Galante acknowledged, as a challenge to a foreclosure. The time this action was filed and these RESPA error notices were sent, there was a final binding judgment of foreclosure that had already determined that appellants had defaulted and failed to make their mortgage payments. They attempted to use the RESPA error notice procedure as a second bite in the apple to take an appeal of that judgment that they failed a timely appeal in the state court, and basically said, state court judge, you got it wrong. We didn't really default. We never should have defaulted. We've sort of been down that road in this case already, right? We've been down the road in the case, but I just note that the only reason we're down the road in this case is because, in the case of no good deed going unpunished, we agreed to vacate that judgment and grant them a modification that allowed them to retain their home when, as Judge Scola recognized, we were under no legal obligation to even entertain that application. We could have thrown it in the shredder because it was untimely in relation to when the foreclosure sale had been set. That's the only reason we're here. Had we not granted them the modification, enabled them to save their homes, and what they all acknowledged was a favorable modification where they agreed on exactly what was and wasn't due and owing, this case would have been over five years ago. And I just want to briefly touch on this damage issue. This issue of nominal damages was not raised. There's a reason this case has been litigated for five years. I think the court can assume what it was. It's because they were claiming actual damages, emotional distress, all of which fell apart on their depositions when they acknowledged that none of this that happened in 2014 caused their alleged distress or injuries that they were claiming. The nominal damage issue is just an ex-post attempt to justify something that wasn't presented in the lower court. All right. Thank you very much, Mr. Godley. Mr. Golant, you have three minutes. And before you start, let me ask you a question. I know the argument you made about nominal damages, generally speaking, but what do we do with your client's deposition testimony saying they can't tie any damages to the alleged RESPA violation? I really don't agree with that characterization of the deposition test. What do you think they testified to? What do you think they said? Their testimony was that to the extent emotional distress was at issue, that their emotional distress was caused by foreclosure. And there is, and I acknowledge, there is a distinction between the foreclosure and the error. Now, in this case, the foreclosure would have stopped, I believe, if NationStar had complied with RESPA, but that distinction wasn't appreciated by the borrowers. Well, but isn't . . . I thought that it turned out that your clients were not up-to-date on their mortgage payments. Isn't that accurate? In discovery, even after this case was remanded to the district court, it was put forward by NationStar that there was another default, which was not the default discussed in the foreclosure complaint, and concerning payments that had literally been made ten years before that, or had been due ten years before that revelation about these missed payments. We were unable to refute that ten years later. However, the record doesn't establish that the foreclosure would have happened, and in fact, it isn't a reasonable inference. I mean, factually, my client was paying her mortgage. Cameron Longston was paying her mortgage, and she was told, you can't make any more payments until you pay over $9,000 in forced-place insurance, and at about that time, the foreclosure complaint showed up. But Mr. Gottlieb said, in response to Judge Jordan's question, when asked where was the explanation about what happened to the forced-place insurance, where was it, he said in the documents, well, the statute doesn't let NationStar off that easy. The statute says that the mortgage servicer must provide a statement of the reason or reason why no error occurred, and as Judge Wright points out, these documents are confusing. They don't make a lot of sense to the borrower who is receiving them. The burden under this regulatory regime is on the servicer to explain itself in the terms presented by the borrower when the borrower describes their error. That didn't happen here, and to Judge Newsom's point, if it did happen, if NationStar had complied with that obligation that the plain language of the statute puts upon it, we wouldn't be worrying about the subjective intention of the letters years later in depositions. We would know. Your contention is that your first letter put them on notice that you were disputing every single forced-placed insurance addition to their account. I think it did, and more specifically, we were pointing out to them there was an error in the foreclosure. We believe that to be the case, and not only that, there was some forced-placed insurance credits, and all this is seen in the letter. However, those credits came after the foreclosure was filed. There was never an explanation, not even in the documents read very broadly, as to why that wasn't true. So even under NationStar's view of the error, they never explained why it didn't happen. The burden was on them under the statute to explain why that error didn't happen. They simply didn't do it, and as a result, even now, we are discussing what the subjective intentions behind the letter were. However, that is a circumstance that flows from their failure to simply disclose the reason or reasons for the determination that there was no error. Congress and the CFPB had the foresight to include that requirement, and that requirement should have been enforced. The overarching error here was that the district court let NationStar off the hook as to that requirement. All right. Thank you both very much.